# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

DANIEL DORSEY,
ADC #113528                                                                                      PLAINTIFF

V.                                    1:10CV00046 JMM/JTR

JOE PAGE, Warden; and
TIMME LOGGAINS, Grimes Unit,
Arkansas Department of Correction                                                DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new,

different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3. An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## I. Introduction

Plaintiff, Daniel Dorsey, is a prisoner in the East Arkansas Regional Unit of the Arkansas Department of Correction. In this *pro se* § 1983 action, he alleges that Defendants Warden Joe Page and Lieutenant Timme Loggains used excessive force

when they extracted him from a cell in the Grimes Unit. *See* docket entry #2.

Defendants have filed a Motion for Summary Judgment, a Brief in Support, a Statement of Undisputed Facts, Plaintiff's deposition, an audio/video recording of the extraction.[1] *See* docket entries #46, #47, #48, and #49. Plaintiff has filed a Response that includes his Statement of Disputed Facts and a Brief in Support. *See* docket entries #56 and #57.

Before discussing the merits of Defendants' Motion, the Court will summarize the relevant, undisputed facts:

1. On February 5, 2010, Plaintiff was confined in the punitive isolation area of the Grimes Unit where he was being punished for assaulting another inmate. *See* docket entries #48, #49, and #56.

2. Around 5:00 p.m., Plaintiff intentionally broke the sprinkler head in his

---

[1] It is well settled that summary judgment should only be granted when the record, viewed in a light most favorable to the nonmoving party, shows that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of informing the court of its basis for the motion and identifying the parts of the record that show lack of a genuine issue. *Celotex,* 477 U.S. at 323. To defeat a motion for summary judgment, the nonmoving party must go beyond the pleadings and establish "by affidavits, or by the depositions, answers to interrogatories, and admissions on file," that specific facts show a genuine issue for trial exists. *See* Fed R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324.

cell. *Id.* Soon thereafter, he was escorted to a single man shower cell in the punitive isolation area. *Id.* The door to that cell was wire mesh, with an open slot in the middle of the door. *Id.*

    3.    While Plaintiff was in the shower cell, a corporal who is not a Defendant in this action, ordered Plaintiff to remove his clothing so that he could be searched for parts of the sprinkler head and other weapons that he may have hidden in his clothing. *Id.* Plaintiff refused to do so. *Id,*

    4.    Defendant Lieutenant Loggains came to the shower cell and ordered Plaintiff to remove his clothing. *Id.* Once again, Plaintiff refused to do so. *Id.*

    5.    Major John Heir, who is no longer a Defendant, arrived at Plaintiff's cell and gave him a final order to remove his clothing.[2] *Id.* Plaintiff refused to do so, and he became belligerent. *Id.*

    6.    At that point, Major Heir left the punitive isolation area and ordered Defendant Loggains and a five-man extraction team to remove Plaintiff from the shower cell. *Id.*

    7.    The videotape begins with the assembly of Defendant Loggains and the

---

[2] On January 6, 2011, the Court granted Plaintiff's request to voluntarily dismiss his claims against Defendant Heir, who died in September of 2010. *See* docket entry #54.

extraction team in the corridor outside of the punitive isolation area.[3]  *See* docket entry #49, Ex. 2.  Each member of the team was wearing full riot gear, and the officer leading the team carried a large plexiglass "shock shield."  *Id.*

       8.      When the team arrived at the shower cell, Defendant Loggains, who was clearly holding a large can of pepper spray, ordered Plaintiff to remove his clothing and to "catch the cuffs."[4]  *Id.*  Plaintiff bent into position to catch the cuffs, but he refused to remove his clothing.

       9.      At that point, Defendant Loggains sprayed Plaintiff in the face with two, half-second bursts of pepper spray.[5]  *Id.*  He then gave Plaintiff a second order to remove his clothing.  *Id.*  Plaintiff refused to do so and began cursing the officers. *Id.*

      10.     Defendant Loggains administered a third, half-second burst of pepper

---

[3] *See Scott v. Harris,* 550 U.S. 372, 380-81 (2007) (explaining that a trial court must consider a videotape of the incident in question when determining whether there is a genuine issue of fact precluding the entry of summary judgment).

[4] To "catch the cuffs," a prisoner puts his back to the cell door and places his hands through the slot so that handcuffs may be applied by officers standing outside of the cell.

[5] Plaintiff claims that Defendant Warden Joe Page was present during the extraction and that he authorized the use of pepper spray.  *See* docket entries #2, $49, #56, and #57.  Defendant Page cannot be seen on the videotape, and the Defendants do not specifically address whether he was present during the extraction.  For the sake of resolving the current motion, the Court will presume that Defendant Page was present and that he authorized the use of pepper spray.

spray to Plaintiff's face.[6]  *Id.*  He then warned Plaintiff that the team would proceed to the "next step" if he continued to refuse to remove his clothing. *Id.*

11. At that point, Plaintiff removed all of his clothing and he placed his hands through the slot in the cell door so that he could be handcuffed by members of the extraction team.

12. The shower was then turned on so that Plaintiff could remove the pepper spray from his body. *Id.*

13. After Plaintiff finished showering, Defendant Loggains and the extraction team removed him from the shower cell and escorted him to another single man cell, without incident. *Id.*

## II. Discussion

To prevail on an Eighth Amendment excessive force claim, a convicted prisoner must demonstrate that the defendants used force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir.

---

[6] In his deposition, Plaintiff alleged that Defendant Loggains sprayed him for "a good minute." *See* docket entry #49 at 11. However, that deposition testimony is "blatantly contradicted" by the videotape which unequivocally demonstrates that Defendant Loggains sprayed Plaintiff with three, half second bursts of pepper spray. *See Scott*, 550 U.S. at 381 (holding that, when ruling upon a motion for summary judgment, a court "should not adopt" a plaintiff's version of the facts if it is "blatantly contradicted" by a videotape of the incident in question).

2008); *see also Whitley v. Albers*, 475 U.S. 312, 322 (1986) (holding that the evidence must support a "reliable inference of wantonness," and not "a mere dispute over the reasonableness of particular use of force or the existence of arguably superior alternatives").

When making this determination, the court must consider: (1) the objective need for the force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the defendants; (4) any efforts by the defendants to temper the severity of their forceful response; and (5) the extent of the inmate's injuries. *Walker v. Bowersox,* 526 F.3d 1186 (8th Cir. 2008); *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2008).

Plaintiff argues that there was no need to use pepper spray because he was standing behind a locked cell door and, thus, could not have physically harmed any of the correctional officers. *See* docket entries #2, #56, and #57.

Contrary to Plaintiff's belief, prison officials are not limited to using pepper spray only when they are physically attacked. Instead, the Eighth Circuit has held that pepper spray may be used if "the inmate's noncompliance. . . poses a threat to other persons or to prison security." *Treats v. Morgan,* 308F.3d 868, 875 (8th Cir. 2002); *see also Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (holding that "a limited application of capstun to control a recalcitrant inmate constitutes a tempered response

by prison officials when compared to other forms of force").

In this case, it is *undisputed* that the officers used pepper spray only after exhausting all other avenues of redress. Specifically, the parties *agree* that, at the time pepper spray was used: (1) Plaintiff was already serving punitive time for assaulting another prisoner; (2) he had intentionally destroyed prison property; and (3) he had disobeyed several direct orders, from prison officials of ascending rank, to remove his clothing so that he could be searched for weapons. Even when faced with an extraction team and a large can of pepper spray, Plaintiff continued to refuse to comply with the officers' orders. Finally, the parties agree that immediately after being sprayed, Plaintiff was allowed to shower to remove the chemicals from his body.

Thus, based on these *undisputed facts*, it is clear that there was an objective need for force, and that three, half-second bursts of pepper spray was a reasonable amount of force used, subjectively, in a good-faith effort to maintain or restore discipline.

Finally, Plaintiff alleges that one of the members of the extraction team touched him with the shock shield as Plaintiff placed his hands through the cell door to be handcuffed. *See* docket entries #2, #56, and #57. Specifically, in his deposition, Plaintiff testified that he screamed: "They're steady [sic] shocking me. They're

shocking me!" *See* docket entry #49, Ex.1 at 13.

There are two problems with this assertion. First and foremost, no where on the videotape of the incident does Plaintiff appear to have been shocked. Similarly, at *no time* did Plaintiff scream or state that he was being shocked. In fact, the officer holding the shock shield was standing several feet away from the cell door when Plaintiff was being handcuffed by the other members of the extraction team. Thus, the videotape squarely controverts Plaintiff's deposition testimony.

Second, Plaintiff has not named the officer carrying the shock shield as a Defendant. Instead, he has named Defendants Loggains and Page, and it is clear from the videotape that they did not order anyone to shock Plaintiff. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) (explaining that there is no respondeat superior liability in §1983 actions, and thus, prison supervisors can only be held liable if they personally participated in the constitutional violation); *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005) (explaining that intentional conduct, rather than negligence, is required to sustain a § 1983 claim).

Based on the undisputed facts and the videotape of the incident, the Court concludes that no reasonable juror could find in favor of Plaintiff. Thus, Defendants Loggains and Page are entitled to summary judgment on the excessive force claim Plaintiff has raised against them. *See Scott,* 550 U.S. at 381 (holding that summary

judgment is appropriate in an excessive force case when, based upon a videotape of the incident, "no reasonable jury could" rule in favor of the plaintiff); *Wallingford v. Olson*, 592 F.3d 888, 892-93 (8th Cir. 2010) (same).

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (docket entry #46) be GRANTED, and that this case DISMISSED, WITH PREJUDICE.

3. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order and Judgment adopting this Recommended Disposition would not be taken in good faith.

Dated this 27th day of May, 2011.

_____
UNITED STATES MAGISTRATE JUDGE